JOHN M. KAERCHER AND ANOTHER v. W. S. SCHEE AND ANOTHER.[1]

June 16, 1933.

No. 29,359.

[1] Reported in 249 N. W. 180.

*F. L.* and *E. V. Cliff,* for appellants.
*Carl J. Eastvold* and *Murphy & Johanson,* for respondents.

OLSEN, *Justice.*

Defendants appeal from an order denying their alternative motion for judgment or a new trial after trial and verdict in favor of the

plaintiffs. Plaintiffs are real estate brokers located at Ortonville in this state.

The plaintiffs' cause of action, in substance, is that they were employed by the defendants to find a purchaser or purchasers for 1,160 acres of land in Wilkin, Big Stone, and Stevens counties in this state at a price of $15 per acre cash net to defendants; that plaintiffs were to get their commission or compensation from the purchasers; that plaintiffs found such purchasers for the entire acreage, who agreed to purchase and were ready, able, and willing to purchase and pay $15 per acre cash therefor; that said purchasers agreed to compensate plaintiffs for their services by giving them an interest in the lands, subject to the $15 per acre cash to be paid by said purchasers to the defendants, and that the interest so to be received by plaintiffs in the land was of the value of some $4,000; that plaintiffs duly notified the defendants that they had procured such purchasers, ready and able to purchase; and that defendants then refused to sell, and withdrew their prior offer and authority to sell. Plaintiffs seek damages for the failure of defendants to accept the purchasers so found and to make the sale.

■ The sharply contested questions tried were whether plaintiffs did procure the purchasers for the land and notify the defendants thereof before the defendants withdrew their offer and authority to plaintiffs to sell the land for $15 per acre cash, net to defendants. The testimony of plaintiffs and one of the purchasers is clear and sufficient to show that plaintiffs procured Geier Brothers, the proposed purchasers, to agree orally to buy the land at the net cash price to the defendants and to agree to compensate plaintiffs for their services, and that said purchasers were ready, able, and willing to complete the purchase. The testimony of plaintiff John Kaercher is that immediately after agreement with the purchasers he informed the defendants by telephone that plaintiffs had sold the lands in accordance with defendants' offer and that the cash was ready for them as soon as abstracts were furnished and title found in shape, and that defendant W. S. Schee answered, "All right." W. S. Schee is the son of defendant I. A. Schee and the one who

had conducted the prior negotiations for defendants. The defendants admit there was a conversation by John Kaercher over the telephone at the time stated, but dispute his testimony as to what was said. This presented a question of fact for the jury. We cannot say that this evidence does not sustain the finding of the jury on that issue. The telephone conversation above stated took place shortly after midnight on August 8. The withdrawal of the authority and offer of the defendants to plaintiffs to sell the land was contained in a telegram sent to plaintiffs some ten hours later.

■ There came into the record a statement of the witness John Kaercher that plaintiffs were to have the exclusive sale of the lands during the season. The complaint does not so allege, and the action was not tried on that theory. The action is based wholly upon the claimed finding of Geier Brothers as purchasers of the land, notice to defendants that such purchasers had been procured and were ready to complete the purchase, the refusal of defendants to make the sale, and withdrawal of their offer to sell after being so notified. It is not based upon any breach of an exclusive right to sell. The court gave to the jury a complete charge, wherein nothing was said about any exclusive right to sell. At the close of the charge plaintiffs' counsel took an exception to that part of the charge wherein the court stated that "if before the plaintiffs secured the Geier Brothers as purchasers for the land in question they were notified by the defendants that the defendants had withdrawn the land and taken the land out of their hands, why the plaintiffs could not recover anything in this case." At that time plaintiffs' counsel for the first time claimed that plaintiffs had the exclusive right to sell. The court then gave some additional instructions and said to the jury that plaintiffs claimed an exclusive right to sell, which was denied by defendants, and that there was a controversy over it, but added:

"I do not think I will modify or change the instruction with respect to the rights of the parties as I have already given them."

The court further said:

"And the plaintiffs rest their case, and so allege, that before they had any advice to the effect that the defendants withdrew the lands from their hands the plaintiffs claim that they had effected a sale, and if they had effected the sale before the notification of plaintiffs by this telegram to this effect: 'My offer of August 6th on Minnesota lands withdrawn,'—I say, if they had negotiated the sale before that, why, the defendants would have no right to withdraw it and could not withdraw it without a breach of the contract. But if the sale was not exclusive—if plaintiffs did not have the exclusive sale of the land or the exclusive right to find a buyer, defendants might withdraw the land before a sale of the same was effected by the plaintiffs."

Defendants' counsel took no exception to the charge or to this addition thereto at the time, but assigned error upon the giving of these additional instructions in the motion for a new trial and here on this appeal. The court in its main charge had repeatedly and clearly charged the jury, in substance, that in order for plaintiffs to recover the jury must find from the evidence that plaintiffs procured Geier Brothers as purchasers of the lands, who agreed to purchase at the price and on the cash terms offered by defendants, and were ready, able, and willing to complete the purchase; that defendants were so informed and notified; and that defendants thereupon refused to complete the sale and withdrew their offer and authority to plaintiffs. The addition to the charge in effect laid down the same rule and said to the jury that the court did not modify or change the instructions already given with respect to the rights of the parties. We find nothing in the additional charge which could mislead the jury or prejudice the defendants.

It is argued at some length that the evidence is insufficient to show that plaintiffs had brought the defendants and the alleged purchasers together to complete any sale or had obtained any binding written contract of sale from the purchasers so as to earn a commission. The action was not for the recovery of a commission from defendants, but for damages because of defendants' breach of their agreement with plaintiffs to sell the land to purchasers pro-

cured .by the plaintiffs, from whom plaintiffs were to receive their compensation. In Goldman v. Weisman, 123 Minn. 370, 373, 143 N. W. 983, 984, the court, after stating the general rule that it is not necessary to bring the principal and the purchaser face to face, but that the principal must be notified that such purchaser has been found and afforded a full opportunity to make a binding contract for the sale of the land on the authorized terms, proceeds to say:

"When plaintiff advised defendants that his customers were ready to buy on defendants' terms, after having theretofore agreed so to do, defendants' refusal to contract, without just reason or excuse, and their repudiation of the agreement with plaintiff, breached the contract and dispensed with the necessity of production of buyers."

See also Vaughan v. McCarthy, 59 Minn. 199, 60 N. W. 1075; McDonald v. Smith, 99 Minn. 42, 108 N. W. 291; Smith v. Mellen, 116 Minn. 198, 133 N. W. 566; Boydstun v. Hackney L. C. Co. 145 Minn. 392, 177 N. W. 779; Huntley v. Smith, 153 Minn. 297, 190 N. W. 341, and cases there cited. So the general rule, as stated in 9 C. J. pp. 623, 624, 625, § 102, is that where a broker finds a customer able and willing to enter into a transaction on the terms proposed by the principal he cannot, unless there is a special contract to the contrary, be deprived of his right to compensation by reason of the principal's refusing to complete the sale without having good grounds for his refusal. The authorities are cited in note 68. 4 R. C. L. p. 255, and note 12; 4 R. C. L. p. 333, § 68.

The defendants showed no just reason for refusing to complete the sale. They did present testimony to the effect that they had given another agent authority to buy or find a purchaser for the land on the same terms, and that shortly after plaintiffs claim they had notified defendants of their purchaser and sale they were notified by such other agent of an acceptance of their proposition by him. If plaintiffs' testimony as to notice to defendants is true, and the jury so found, defendants may have had good grounds for refusing the sale tendered by their other agent, but had no good ground for refusing to complete the sale negotiated by plaintiffs.

■ It is argued that plaintiffs are not entitled to recover b.ecause under their agreement with Geier Brothers they were to receive from said purchasers some interest in the value of the land over and above the net price paid by the purchasers to defendants as their compensation instead of a cash commission. The complaint discloses the facts as to the compensation to be received by plaintiffs from Geier Brothers. The answer did not allege any fraud or misconduct of the plaintiffs in reference thereto.

In Sill v. Ceschi, 167 Cal. 698, 140 P. 949, the broker was authorized to find a purchaser for a tract of land at the price of $15,000 net to the owner. The broker was to have as his commission all above the net price. The land contained an orchard with a crop of apples and grapes growing therein, which crop was to go with the land. The purchaser agreed with the broker to pay the net price of $15,000 to the owner and, in addition thereto, to give to the broker the crop of apples and grapes. The court held that the owner, as long as he received his $15,000, was not interested in the terms agreed upon between the broker and the purchaser for payment of the excess, nor in the fact that the excess was to be paid in something other than money. The broker was held entitled to recover the value of the crop as his commission. Luhn v. Fordtran (Tex. Civ. App.) 115 S. W. 667; Werner v. Leser, 195 Wis. 99, 217 N. W. 650.

Authorities on the precise question presented are not numerous or readily found. There are numerous authorities establishing the rules that the broker must act in good faith towards his principal and that any fraud or wrongdoing on his part in that regard will prevent him from recovering any commission or compensation for his services from his principal, and under these rules the broker cannot himself become the purchaser or interested in the purchase of the property without the knowledge and consent of his principal. But these rules, as far as we are informed, are applied to cases where action is brought to recover commission from the principal, where the principal has agreed to pay a commission or pay the reasonable value of the broker's services. Where the principal asks

a net price to himself and requires or authorizes the broker to get his compensation out of the purchaser, he in effect invites the broker to negotiate with the purchaser for his compensation and is not further interested in that matter. In the absence of fraud on the part of the broker, the principal is not in a position to complain because the broker agrees with the purchaser to get compensation either in money or in property. Under such a contract, the principal must be held to have considered that the property to be sold had some excess value over the net price, so that the broker could make the sale with some agreement by the purchaser to compensate him in money or property for his services in addition to paying the net price to the owner.

■ The plaintiffs were employed and engaged for some two months in seeking purchasers for all or parts of the land in question. Purchasers were not readily found. There were negotiations and correspondence with defendants as to prices. The jury found that the value of the interest which the purchasers agreed to give to plaintiffs as their compensation for services in finding the purchasers was $1,000 and awarded damages in that amount, a very moderate compensation. There is no sufficient showing of fraud, even if it had been pleaded.

Other errors assigned are found not to require consideration here. The order appealed from is affirmed.

*DIBELL* and *STONE, Justices.*
We dissent.